AO 108 (Rev. 06/09)  Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| *(Briefly describe the property to be seized)* | ) | |
| A BOEING 747-300M AIRCRAFT, | ) | Case No.    22-sz-16 |
| BEARING TAIL NUMBER YV-3531 AND | ) | |
| MANUFACTURER SERIAL NUMBER 23413 | ) | |

## APPLICATION FOR A WARRANT TO SEIZE
## PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the jurisdiction of the District of Columbia is subject to forfeiture to the United States of America under _____ U.S.C. § 50 U.S.C. §§ 4819(a), 4820(a)(5) and (j), 18 U.S.C. § 981 and 21 U.S.C. § 853(e) and (f)

(describe the property): A BOEING 747-300M AIRCRAFT, BEARING TAIL NUMBER YV-3531 AND MANUFACTURER SERIAL NUMBER 23413

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE.

❏ Continued on the attached sheet.

_____
*Applicant's signature*

Adam Mastrianni, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:    07/19/2022

_____
*Judge's signature*

City and state:    District of Columbia

G. Michael Harvey, United States Magistrate Judge
*Printed name and title*

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| *(Briefly describe the property to be seized)* | ) | |
| A BOEING 747-300M AIRCRAFT, | ) | Case No.  22-sz-16 |
| BEARING TAIL NUMBER YV-3531 AND | ) | |
| MANUFACTURER SERIAL NUMBER 23413 | ) | |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the _____ jurisdiction of the _____ District of _____ Columbia _____ be seized as being subject to forfeiture to the United States of America.  The property is described as follows:

A BOEING 747-300M AIRCRAFT, BEARING TAIL NUMBER YV-3531 AND MANUFACTURER SERIAL NUMBER 23413

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property on or before _____ 08/02/2022 _____
*(not to exceed 14 days)*

❏ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to _____ G. Michael Harvey _____ .
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days (not to exceed 30)   ❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:   _____ 07/19/2022 _____      _____
*Judge's signature*

City and state:   _____ District of Columbia _____      _____ G. Michael Harvey, United States Magistrate Judge _____
*Printed name and title*

AO 109 (Rev. 11/13)  Warrant to Seize Property Subject to Forfeiture (Page 2)

| Return | | |
|---|---|---|
| Case No.:<br><br>22-sz-16 | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of: | | |
| Inventory of the property taken: | | |

| Certification |
|---|
|     I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.<br><br><br>Date: _____<br><br><br><br>                                                      _____<br>                                                      *Executing officer's signature*<br><br><br>                                                      _____<br>                                                      *Printed name and title* |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN THE MATTER OF THE SEIZURE OF A BOEING 747-300M AIRCRAFT, BEARING TAIL NUMBER YV-3531 AND MANUFACTURER SERIAL NUMBER 23413** | **Case No. 22-sz-16**<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEIZURE WARRANT**

I, Adam Mastrianni, Federal Bureau of Investigation, being first duly sworn, state as follows:

## I.     INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of the United States of America's application for a civil and criminal seizure warrant, pursuant to 50 U.S.C. §§ 4819(a), 4820(a)(5) and (j), 18 U.S.C. § 981 and 21 U.S.C. § 853(e) and (f), for a Boeing 747-300M, bearing tail number YV-3531 with the livery and logo of EMTRASUR along the side of the fuselage and manufacturer serial number 23413 (the "TARGET Aircraft").[1]

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI"). As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure

---

[1] This aircraft previously flew under Iranian tail number EP-MND for Mahan Airways, which is a Specially Designated National ("SDN") pursuant to Executive Order (E.O.) 13224.

41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have been a Special Agent at the FBI for approximately 18 years. I am currently assigned to Miami's FBI Joint Terrorism Task Force ("JTTF"). My responsibilities include the enforcement of federal laws involving international terrorism, money laundering, and other white-collar violations. I have also worked with other government agencies investigating Specially Designated Nationals ("SDN") that violate and unlawfully evade U.S. laws.

3.      Special Agent Robert Cunniff from the U.S. Department of Commerce also referred to as "DOC"), Bureau of Industry and Security ("BIS"), Office of Export Enforcement ("OEE") and your Affiant are jointly working this case.  Special Agent Cunniff provided support in investigating the unlawful export of commodities to destinations outside the United States, as specified in the Export Control Reform Act of 2018 ("ECRA"), 50 U.S.C. § 4801 *et seq.* and the Export Administration Regulations ("EAR"), 15 C.F.R. parts 730-774.

4.      The statements contained in this affidavit are based in part on my examination of reports and records, including from the U.S. Department of Commerce, the FBI, the Government of Argentina, The Boeing Company, airline databases, court documents, publicly available information, and information obtained from other law enforcement agencies (collectively, the "Records").  This affidavit does not set forth every fact resulting from the investigation; rather, it sets forth facts sufficient to establish probable cause for the seizure and forfeiture of the TARGET Aircraft.

5.      Based upon the facts set forth in this affidavit, I submit that there exists probable cause to believe that, under ECRA, the TARGET Aircraft is subject to seizure and forfeiture, pursuant to 50 U.S.C. §§ 4820(a)(5) and (j), as an item subject to controls under, and transferred and reexported in violation of, Subchapter I of Chapter 58, Title 50, United States Code, and regulations, orders, licenses, and other authorizations issued thereunder.

## II. **STATUTORY BACKGROUND**

6.      This application seeks a seizure warrant under criminal and civil authority because the TARGET Aircraft could easily be placed beyond process if not seized by a warrant. The TARGET Aircraft is currently under a temporary administrative hold under the laws of Argentina that may be lifted at any time.

7.      Pursuant to 18 U.S.C. § 981(b), property subject to forfeiture under § 981 may be seized via a civil seizure warrant issued by a judicial officer "in any district in which a forfeiture action against the property may be filed," if there is probable cause to believe the property is subject to forfeiture.  Section 982(b)(1) incorporates the procedures in 21 U.S.C. § 853 (other than subsection (d)) for all stages of a criminal forfeiture proceeding.  Section 853(f) permits the government to request the issuance of a seizure warrant for property subject to criminal forfeiture. Thus, seizure warrants may be obtained outside of the district where the property to be seized is located.

8.      ECRA grants the President of the United States the authority, among other things, to "control . . . the export, reexport, and in-country transfer of items subject to the jurisdiction of

the United States, whether by United States persons or by foreign persons . . . relating to" specific categories of items and information. 50 U.S.C. § 4812(a). ECRA further grants the Secretary of the U.S. Department of Commerce the authority to establish the applicable regulatory framework. 50 U.S.C. §§ 4813-4815.

9.     Pursuant to that authority, the U.S. Department of Commerce reviews and controls the export of certain items, including goods, software, and technologies, from the United States to foreign countries through the EAR, 15 C.F.R. parts 730-774. In particular, the EAR restricts the export of items that could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. The EAR imposes licensing and other requirements for items subject to the EAR to be lawfully exported from the United States or lawfully reexported from one foreign destination to another.

10.    The most sensitive items subject to EAR controls are identified on the Commerce Control List ("CCL") published at 15 C.F.R. part 774, Supp. No. 1. Items on the CCL are categorized by Export Control Classification Number ("ECCN"), each of which has export control requirements depending on destination, end use, and end user. Aircraft and aircraft parts and components are specified items under ECCN 9A991 and are controlled for anti-terrorism reasons.

11.    Pursuant to 50 U.S.C. § 4819(a)(1), "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of this part or of any regulation, order, license, or other authorization issued under this part." Moreover, Section 4819(a)(2)(J) states that

"[n]o person may take any action that is prohibited by a denial order or a temporary denial order issued by the Department of Commerce to prevent imminent violations of this subchapter, the Export Administration Regulations, or any order, license or authorization issued thereunder." Pursuant to Section 4819(b), "[a] person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids and abets in the commission of, an unlawful act described in subsection (a) shall" be guilty of a crime, and pursuant to Section 4819(c)(1), the Secretary of Commerce may impose "civil penalties on a person for each violation by that person of this subchapter or any regulation, order, or license issued under this subchapter."

### III.    PROBABLE CAUSE

12.    This application to seize and forfeit the TARGET Aircraft is based on, inter alia, violations of a Temporary Denial Order ("TDO") issued by the U.S. Department of Commerce against Mahan Air a/k/a Mahan Airlines a/k/a Mahan Airways ("Mahan Air"). The violations result from the unlawful transfer of custody and control of the TARGET Aircraft to Venezuelan airline, Empresa de Transporte Aéreocargo del Sur, S.A. ("EMTRASUR"), a subsidiary of Venezuelan state-owned company, Consorcio Venezolano de Industrias Aeronáuticas y Servicios Aéreos, S.A ("CONVIASA"), and subsequent unlawful reexports (i.e., flights) to foreign destinations, including Iran and Russia.

13.    As set forth below, there is probable cause to believe that the TARGET Aircraft was transferred from Mahan Air to EMTRASUR without U.S. Government authorization in violation of ECRA and regulations, orders, and licenses issued thereunder.  EMTRASUR has

continued to engage in ongoing violations of ECRA and the EAR by reexporting the TARGET Aircraft, including, for example, by using the TARGET Aircraft for flights to Iran and Russia on or about the following dates: February 19, 2022 (Venezuela-Iran), March 13, 2022 (Venezuela-Iran), April 17, 2022 (Venezuela-Iran), May 21, 2022 (Venezuela-Iran), May 24, 2022 (Iran-Russia), and May 25, 2022 (Russia-Iran). The TARGET Aircraft was U.S.-manufactured and therefore is subject to the EAR and classified under ECCN 9A991.

14.     U.S. Government authorization was required to reexport the TARGET aircraft, including to Iran and Russia (*i.e.*, for the TARGET Aircraft to fly from a foreign country to Iran and Russia) — but no authorizations were applied for or issued. Nor was any license exception available, including because the TARGET Aircraft was owned and/or controlled by a sanctioned Iranian entity that was restricted from transferring the TARGET Aircraft.

## A.  BACKGROUND

15.     The TARGET Aircraft was first placed into service on or about January 23, 1986, by the now-defunct French company Union de Transports Aériens (UTA).

16.     Since in or around 2007, the TARGET Aircraft was owned and/or operated by Mahan Air.[2] Since on or about March 21, 2008, DOC has had in place a TDO against Mahan Air and others ("Mahan Air TDO") denying Mahan Air export privileges, including the transfer of the

---

[2]  On or about October 12, 2011, U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") added Mahan Air to the SDN List pursuant to Executive Order (E.O.) 13224 for "providing financial, material and technological support to the Islamic Revolutionary Guard Corps-Qods Force (IRGC-QF)."  *See* https://home.treasury.gov/news/press-releases/tg1322.  According to OFAC, Mahan Air provided travel services to IRGC-QQ personnel and facilitated IRGC-QF arms shipments.

TARGET Aircraft, without U.S. Government authorization.  The Mahan Air TDO has been renewed on or about every six months thereafter and remains in effect.

17.     In or around October 2021, Mahan Air transferred custody and control of the TARGET Aircraft, through an intermediary,  Lance Tech General Trading Company, LLC ("Lance Tech"), in the United Arab Emirates, to EMTRASUR, which is a subsidiary of CONVIASA.[3]  Neither Mahan Air nor EMTRASUR obtained U.S. Government authorization to transfer the TARGET Aircraft from Mahan Air to Lance Tech or EMTRASUR or to reexport the TARGET Aircraft on subsequent international flights, including to Iran and Russia.

## B. MAHAN AIR TEMPORARY DENIAL ORDER

18.     A TDO is an administrative order issued under the authorities of ECRA and the EAR and signed by the Assistant Secretary of Commerce for Export Enforcement when presented with evidence demonstrating the need to "temporarily deny export privileges when such an order is necessary in the public interest to prevent the occurrence of an imminent violation."  50 U.S.C. § 4820(a)(5) and 15 C.F.R. § 766.24.  Any named parties to the TDO, which further encompasses any related parties, agents, representatives, or those acting for or on their behalf, are broadly prohibited from directly or indirectly participating "in any way" in a transaction involving U.S.-origin commodities or those subject to the EAR.  The TDO also prohibits third parties from

---

[3]   On or about February 7, 2020, OFAC added CONVIASA to the SDN List pursuant to E.O. 13884. *See* https://home.treasury.gov/news/press-releases/sm903.

engaging in a broad range of conduct subject to the EAR with denied persons.

19.    On March 17, 2008, the Assistant Secretary of Commerce for Export Enforcement signed a TDO denying Mahan Air's export privileges. The TDO broadly prohibits Mahan and other persons or companies acting for or on Mahan's behalf, directly or indirectly, from participating in any export transaction. This TDO has been successively renewed, the latest renewal of which occurred on May 13, 2022. 87 Fed. Reg. 30,173 (May 18, 2022).  Moreover, the TDO prohibits Mahan from "[a]pplying for, obtaining, or using any license, license exception, or export control document."

## C.  EXPORT ADMINISTRATION REGULATIONS GENERAL PROHIBITION NO. 10

20.    Section 736.2(b)(10) of the EAR provides:

> *General Prohibition Ten - Proceeding with transactions with knowledge that a violation has occurred or is about to occur (Knowledge Violation to Occur).* You may not sell, transfer, export, reexport, finance, order, buy, remove, conceal, store, use, loan, dispose of, transport, forward, or otherwise service, in whole or in part, any item subject to the EAR and exported or to be exported with knowledge that a violation of the Export Administration Regulations, the Export Administration Act or any order, license, License Exception, or other authorization issued thereunder has occurred, is about to occur, or is intended to occur in connection with the item.  Nor may you rely upon any license or License Exception after notice to you of the suspension or revocation of that license or exception.  There are no License Exceptions to this General Prohibition Ten in part 740 of the EAR.

## D.  IRAN-RELATED EXPORT CONTROLS UNDER THE EAR

21.    Pursuant to Section 746.7 of the EAR, DOC-BIS "maintains licensing requirements

on exports and reexports to Iran under the EAR as described in paragraph (a)(1) of this section or elsewhere in the EAR (*See, e.g.,* § 742.8 – Antiterrorism: Iran)." 15 C.F.R. § 746.7 (emphasis added).

22.     Section 742.8 of the EAR provides, "[a] license is required for anti-terrorism purposes to export or reexport to Iran an item for which AT column 1 or AT column 2 is indicated in the Country Cart column of the applicable ECCN . . . ." *See also* 15 C.F.R. § 746.7(a)(1).

23.     ECCN 9A991 "Aircraft" indicates that "AT applies to entire entry" and that anti-terrorism controls apply under AT Column 1 of the Country Chart. *See* 15 C.F.R. part 774, Supp. No. 1. Section 764.7(c) further provides that "[n]o license exceptions may be used for exports or reexports to Iran." Thus, exports and reexports to Iran of aircraft classified under ECCN 9A991 and controlled for AT reasons require a license, and no license exceptions are available.

## E.  THE TARGET AIRCRAFT

24.     Based on my review of the Records and information obtained from my conversations with other law enforcement agents, including BIS-OEE Special Agent Robert Cunniff, I believe that custody of the TARGET Aircraft was transferred to EMTRASUR in violation of the TDO and reexported, including to Iran and Russia, in violation of ECRA and regulations, orders, and licenses issued thereunder, including the Iran sanctions, as follows:

25.     The Boeing Company, headquartered in Renton, Washington, manufactured the TARGET Aircraft, a Boeing 747-300, in the United States in approximately 1986. The U.S. Department of Commerce reviewed information related to the TARGET Aircraft and determined

that it is subject to the EAR and is classified under ECCN 9A991. Accordingly, at all relevant times, U.S. Government authorization was required under the EAR for the reexport of the TARGET Aircraft to Russia or Iran. No U.S. Government authorization or license was sought or received for Mahan Air to transfer the TARGET aircraft to EMTRASUR or to reexport the TARGET Aircraft to Iran or Russia, including for the flights on February 19, 2022 (Venezuela-Iran), March 13, 2022 (Venezuela-Iran), April 17, 2022 (Venezuela-Iran), May 21, 2022 (Venezuela-Iran), May 24, 2022 (Iran-Russia), and May 25, 2022 (Russian-Iran), nor was any license exception available.

26.     The TARGET Aircraft purports to be registered to EMTRASUR under tail number YV-3531. EMTRASUR's parent company CONVIASA purports to have purchased the TARGET Aircraft from Lance Tech, a company located in Dubai, United Arab Emirates. According to open sources, the TARGET Aircraft was under the custody and control of Mahan Air until on or about October 2019 when it was placed into storage due to ongoing maintenance concerns. Open sources indicate Lance Tech is involved in the tourism industry. According to a purported Sale and Purchase agreement, dated in or around July 2021, CONVIASA paid €8 million for the TARGET aircraft and was to receive custody and/or control of the TARGET aircraft in or around October 2021. This agreement made specific reference to and provided for technical and mechanical assistance from the Civil Aviation Organization of the Islamic Republic of Iran. Neither Mahan Air, CONVIASA, EMTRASUR, Lance Tech nor anyone else sought or received authorization from the U.S. Government to transfer the TARGET Aircraft, nor was any license exception

available.  Because the transfer of the TARGET Aircraft was not licensed or otherwise authorized by the U.S. Government, especially the U.S. Department of Commerce, subsequent transactions involving the aircraft, including reexports, were and are not authorized under the EAR.  Prior to the unlicensed transfer to Lance Tech and then to EMTRASUR in or around October 2021, the TARGET Aircraft was registered to Mahan Air under tail number EP-MND.

    a.   A photograph of the TARGET Aircraft from September 6, 2019 with the Mahan Air livery and logo.



    b.   A photograph of the TARGET Aircraft from January 23, 2022 with the EMTRASUR livery and logo.



       c.       EMTRASUR's Flight records for the TARGET Aircraft reflect that, after its unauthorized acquisition, the TARGET Aircraft was reexported to Iran and Russia without authorization on multiple occasions as part of its international routes, including the following flights to Tehran, Iran, and Moscow, Russia:

       i.       On or about February 19, 2022, the TARGET Aircraft flew from Caracas, Venezuela to Tehran, Iran;

       ii.       On or about March 13, 2022, the TARGET Aircraft flew from Caracas, Venezuela to Tehran, Iran;

       iii.       On or about April 17, 2022, the TARGET Aircraft flew from Caracas, Venezuela to Tehran, Iran;

       iv.       On or about May 21, 2022, the TARGET Aircraft flew from Caracas, Venezuela to Tehran, Iran;

       v.       On or about May 24, 2022, the TARGET Aircraft flew from

Tehran, Iran to Moscow, Russia; and

        vi.     On or about, May 25, 2022, the TARGET Aircraft flew from Moscow, Russia to Tehran, Iran.

        d.     On or about June 6, 2022, the TARGET Aircraft landed at Ezeiza International Airport in Buenos Aires, Argentina, but fuel suppliers in Argentina refused to refuel the TARGET Aircraft due to its association with multiple sanctioned entities.  On or about June 8, 2022, the TARGET Aircraft departed to Uruguay to refuel.  But Uruguay refused to grant the TARGET Aircraft access to its airspace due to its association with multiple sanctioned entities.  That same day, on or about June 8, 2022, the TARGET Aircraft landed a second time at Ezeiza International Airport in Buenos Aires.  After landing a second time, the Government of Argentina detained the TARGET Aircraft, identified the TARGET Aircraft's flight crew, examined the flight records, and searched and seized the flight crews' electronic devices.

        e.     Through mechanisms of international cooperation, Argentine law enforcement provided a flight log located in the TARGET Aircraft to U.S. law enforcement authorities.  The flight log was titled, "Crew Mini Log, Mahan Air, Flight Operation," as illustrated below:

Page 13 of 23



   f.  From analyzing the recorded flights in the Crew Mini Log, your Affiant discovered that the TARGET Aircraft traveled to/from Iran between March 2022 and April 2022, as reflected below.

    i.  On or about March 18, 2022, the TARGET Aircraft traveled from Imam Khomeini International Airport Tehran, Iran (International Civil Aviation Organization ("ICAO") Code: OIIE), to Belgrade Nikola Tesla Airport, Belgrade, Serbia (ICAO Code: LYBE). After Belgrade Nikola Tesla Airport (LYBE), the TARGET Aircraft continued to Amilcar Cabral International Airport, Cape Verde (ICAO Code: GVAC), as illustrated below in the Crew Mini Log:



ii.    On or about March 20, 2022, the TARGET Aircraft left Amilcar Cabral International Airport (GVAC) and arrived at Simon Bolivar International Airport, Caracas, Venezuela (ICAO Code: SVMI), as illustrated below in the Crew Mini Log:



iii.    On or about April 4, 2022, the TARGET Aircraft left Simon Bolivar International Airport (SVMI) to Jose Marti International Airport, Havana, Cuba (ICAO Code: MUHA) and returned to SVMI, as illustrated below in the Crew Mini Log:



iv.     On or about April 7/8, 2022, the TARGET Aircraft left Simon

Bolivar International Airport (SVMI) to Jose Marti International Airport (MUHA), MUHA to

Mexico City International Airport (ICAO Code: MMMX), and MMMX to SVMI, as illustrated

below in the Crew Mini Log:



v.     On or about April 17, 2022 the TARGET Aircraft left Simon Bolivar

International Airport (SVMI) to Imam Khomeini International Airport Tehran, Iran (OIIE), as

illustrated below in the Crew Mini Log:



      g.      In addition, the following was discovered during the examination of the TARGET Aircraft and flight crew:

      i.      According to official reports from the Government of Argentina and open-source reporting, nineteen crewmembers were onboard, consisting of five Iranian crewmembers and fourteen Venezuelans.

      ii.      The Iranian crewmembers included Gholamreza Ghasemi, who was registered as the TARGET Aircraft's captain. Gholamreza Ghasemi is an ex-commander for Islamic Revolutionary Guard Corps ("IRGC"), and shareholder and member of the board at the OFAC-sanctioned Iranian airline Qeshm Fars Air. Also, according to open-source reporting, the Argentine authorities are investigating whether one or more of the remaining Iranian crewmembers are members of the IRGC's Quds Force. The United States designated the IRGC and Quds Force as Foreign Terrorist Organizations ("FTO") because the IRGC, including its Quds Force, are used to support terrorist organizations, provide cover for associated covert

operations, and create instability in the Middle East.[4] OFAC designated Qeshm Fars Air under the Executive Order 13224, a counterterrorism authority, for, among other things, providing material support to IRGC's Quds Force. Qeshm Fars Air is owned and/or controlled by Mahan Air, and Mahan Air plays an integral role in supporting the IRGC's Quds Force and its proxies in Syria by transporting personnel and weapons.[5]

       iii.    An examination of Gholamreza Ghasemi's electronic devices by Argentine federal police forces revealed pictures of weapons, possible electronic surveillance equipment, past photos of Gholamreza Ghasemi in IRGC uniforms and anti-Israeli statements in Farsi.

       iv.    The Crew Mini Log located in the TARGET Aircraft also had flights recorded for a Boeing 747-200 bearing Tail Number EP-FAA, which, according to open sources, is registered to Qeshm Fars Air.

       1.    On or about September 28, 2021, Qeshm Fars Air bearing Tail Number EP-FAA left Imam Khomeini International Airport Tehran, Iran (OIIE) to Damascus International Airport, Damascus, Syria (ICAO Code: OSDI) and returned the same day to Imam Khomeini International Airport Tehran, Iran (OIIE), as illustrated below in the

---

[4] *See* U.S. Department of State, Fact Sheet: Designation of the Islamic Revolutionary Guard Corps (April 8, 2019), available at https://2017-2021.state.gov/designation-of-the-islamic-revolutionary-guard-corps/index.html.

[5] *See* U.S. Department of the Treasury, Press Release: Treasury Designates Iran's Foreign Fighter Militias in Syria along with a Civilian Airline Ferrying Weapons to Syria (January 24, 2019), available at https://home.treasury.gov/news/press-releases/sm590

Crew Mini Log:



2.      On or about October 12, 2021, January 11, 2022, February 8, 2022, March 17, 2022, and April 26, 2022, Qeshm Fars Air bearing Tail Number EP-FAA left Imam Khomeini International Airport Tehran, Iran (OIIE) to Damascus International Airport, Damascus, Syria (OSDI) and returned the same day to Imam Khomeini International Airport Tehran, Iran (OIIE).

3.      On or about October 24, 2021, November 26/27, 2021, April 19, 2022 and April 28, 2022, Qeshm Fars Air bearing Tail Number EP-FAA left Imam Khomeini International Airport Tehran, Iran (OIIE) to Sheremetyevo International Airport, Moscow, Russia (ICAO Code: UUEE) and returned the same day to Imam Khomeini International Airport Tehran, Iran (OIIE) with the exception of the November 27, 2022 return flight which returned the next day.

h.      Based on my review of the Records and information obtained from my conversations with other law enforcement agents and witnesses, I believe that (1) the purported

Page 19 of 23

transfer of custody and/or control from Mahan Air to EMTRASUR, via an intermediary, of the TARGET Aircraft was in violation of the DOC-issued TDO because Mahan Air, as a denied person, is not authorized to engage in transactions involving items subject to the EAR without a license or other authorization from DOC, which is located in Washington, D.C.; (2) EMTRASUR acquired custody and/or control of the TARGET Aircraft in violation of a DOC-Issued TDO and thus subsequent transactions involving the aircraft, including reexports, are not authorized under the EAR;  and (3) no licenses were obtained from the DOC, which is located in Washington, D.C., for reexports of the TARGET Aircraft, including to Iran or Russia.

## IV.   CRIMINAL SEIZURE WARRANT AUTHORITY

27.     Section 4819(a)(1) of Title 50 provides: "It shall be unlawful for a person to violate, attempt to violate, or cause, a violation of this subchapter or of any regulation, order, license, or other authorization issued under this subchapter[.]"

28.     Section 4819(a)(2)(J) of Title 50 provides: "No person may take any action that is prohibited by a denial order or a temporary denial order issued by the Department of Commerce to prevent imminent violations of this subchapter, the Export Administration Regulations, or any order, license or authorization issued thereunder.

29.     Section 4819(b) of Title 50 provides: "A person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids and abets in the commission of, an unlawful act described in subsection (a) shall" be guilty of a crime[.]"

30.     Section 4819(d) of Title 50 provides that the procedures governing criminal seizure

and forfeiture authority are established under Section 853 of Title 21.

31.     In addition, 21 U.S.C. § 853(f) provides "[i]f the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (e) may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property."

32.     As noted above, the TARGET Aircraft is currently under a temporary administrative hold under the laws of Argentina which are due to expire. Further, the historical flight destinations of the TARGET Aircraft suggest that should the administrative hold expire, a protective order under 21 U.S.C. § 853(e) would be insufficient to assure the availability of the asset for forfeiture.

## V.     <u>CIVIL SEIZURE WARRANT AUTHORITY</u>

33.     Section 4820(a)(5) of Title 50 provides: "In order to enforce this subchapter, the Secretary [of Commerce], on behalf of the President, may exercise, in addition to relevant enforcement authorities of other Federal agencies, the authority to . . . detain, seize, or issue temporary denial orders with respect to items, in any form, that are subject to controls under this subchapter, or conveyances on which it is believed that there are items that have been, are being, or are about to be exported, reexported, or in-country transferred in violation of this subchapter, or any regulations, order, license, or other authorization issued thereunder."

34.     Section 4820(j) of Title 50 subjects to civil forfeiture, "[a]ny property, real or

personal, tangible or intangible, seized under subsection (a) [of 50 U.S.C. § 4820] by designated officers or employees" and provides that "[a]ny seizure or forfeiture under this subsection shall be carried out in accordance with the procedures set forth in section 981 of title 18."

35.     Section 981(b)(2) provides that such a seizure may be made "pursuant to a warrant obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure."

36.     In addition, 18 U.S.C. § 981(b)(3) provides that, notwithstanding the provisions of Federal Rule of Criminal Procedure 41(a), a seizure warrant may be issued pursuant to Section 981(b) by a judicial officer in any district in which a forfeiture action against the property may be filed under 28 U.S.C. § 1355(b). Because the TARGET Aircraft is owned by EMTRASUR, a subsidiary of Venezuelan State-owned company CONVIASA, the District of Columbia has jurisdiction and venue over this seizure and forfeiture action, pursuant to 28 U.S.C. § 1391(f)(4).

37.     Under 18 U.S.C. § 981(b)(3), a seizure warrant "may be executed in any district in which the property is found or transmitted to the central authority of any foreign state for service in accordance with any treaty or other international agreement." As noted above, the TARGET Aircraft has been in Argentina since on or about June 8, 2022.

## VI. CONCLUSION

38.     Based on the forgoing, I submit that there is probable cause to believe that the TARGET Aircraft is subject to seizure and forfeiture, pursuant to 50 U.S.C. §§ 4820(a)(5) and (j), as an item subject to controls under, and reexported in violation of, Subchapter I of Chapter 58,

Title 50, United States Code, and regulations, orders, licenses, and other authorizations issued thereunder.

39.     Accordingly, pursuant to both civil, 50 U.S.C. § 4820(j)(2) and 18 U.S.C. § 981(b), and criminal, 50 U.S.C. § 4819(a) and 21 U.S.C. § 853(e) and (f), forfeiture authorities, I respectfully request that the Court issue a seizure warrant authorizing the seizure of the TARGET Aircraft.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,

_____
Adam Mastrianni
Special Agent
Federal Bureau of Investigation

Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on July 19, 2022.

_____
HONORABLE G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE

Page 23 of 23